U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 NOV 16 PM 1: 42

CLERK

BY LAW
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MANCHESTER CP, )
)
Appellant, )
)
v. ) Case No. 2:17-cv-9
)
ARGIRIOS KONSTANTINOU, )
SARONIS, LLC, and )
MHOP RESTAURANT CORP., )
)
Appellees. )

# OPINION AND ORDER REVERSING AND VACATING THE BANKRUPTCY COURT'S JANUARY 6, 2017 ORDER EXTENDING THE AUTOMATIC STAY TO CERTAIN NON-DEBTOR ENTITIES AND REMANDING FOR FURTHER PROCEEDINGS
(Doc. 2-17)

Manchester CP ("Appellant"), a creditor in Argirios Konstantinou's ("Debtor") chapter 13 bankruptcy proceeding, appeals a January 6, 2017 order of the United States Bankruptcy Court for the District of Vermont extending the automatic stay under 13 U.S.C. § 362(a) to non-debtor entities Saronis, LLC ("Saronis") and MHOP Restaurant Corp. ("MHOP") in pending state court litigation ("the state court litigation") under *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003).

Appellant argues that the Bankruptcy Court committed legal error by extending the automatic stay of bankruptcy to Saronis and MHOP in the circumstances of this case because Debtor neither owns, nor controls, nor is inextricably intertwined with either of those entities. Debtor counters that Saronis and MHOP are integral to the success of his chapter 13 reorganization plan and asserts that he will suffer an immediate adverse economic consequence if state court litigation against those non-debtor entities is permitted to proceed. Alternatively, Debtor argues that extension of the automatic stay to

Saronis and MHOP was within the Bankruptcy Court's equitable authority under 11 U.S.C. § 105(a).

On June 21, 2017, the parties completed their briefing. On September 20, 2017, this court heard oral argument, after which the court took the matter under advisement. Appellant is represented by Patrick J. Bernal, Esq. and Debtor is represented by Rebecca A. Rice, Esq.

## I. Factual and Procedural Background.

In July 2014, Appellant filed a breach of contract suit against Debtor and A&A Restaurant, Inc. ("A&A"), alleging amounts due under a commercial lease between A&A and Appellant for certain real property located in the Manchester Shopping Center, 263 Depot Street, Manchester, Vermont ("the leased property"). Debtor operated a pizzeria through A&A at the leased property.

In early June 2014, after allegedly failing to make rental payments to Appellant for the leased property, A&A vacated the property without notice and moved the pizzeria to real property located at 315 Depot Street in Manchester owned by Saronis (the "Saronis property"). MHOP presently operates the pizzeria at the Saronis property. In July 2014, Appellant declared its lease with A&A in default and initiated litigation in Vermont Superior Court, claiming approximately $500,000 in compensatory damages.

Thereafter, on October 24, 2014, Appellant amended its state court complaint to include Saronis and MHOP as defendants. In its amended complaint, pursuant to alter ego and successor-in-liability theories, Appellant alleges that Saronis and MHOP are responsible for the damages resulting from A&A's breach of contract with regard to the leased property. More specifically, Appellant's amended complaint alleges in Count I that A&A breached the lease agreement which Debtor guaranteed and that A&A and Debtor are liable to Appellant for damages caused by that breach. In Count II, Appellant asserts a breach of contract claim against MHOP, alleging that MHOP is the corporate successor to A&A and is liable for its debts owed to Appellant under the lease agreement and is also the alter ego of Debtor who allegedly "controls MHOP and is using its corporate form to evade his contractual responsibilities." (Doc 2-6 at 17, ¶ 36.) In Count

2

III, Appellant alleges a breach of contract claim against Saronis as the alter ego of Debtor, asserting that Debtor "controls Saronis and is using its corporate form to evade his contractual responsibilities." *Id.* at ¶ 41. In Counts II and III, Appellant asks that a judgment be entered against MHOP and Saronis, respectively.

On July 29, 2016, after the commencement of the state court litigation, Debtor filed for chapter 13 bankruptcy protection. The Vermont Superior Court subsequently stayed Appellant's lawsuit against Debtor pursuant to § 362(a)'s automatic stay. Thereafter, on August 5, 2016, the state court issued an entry order requiring the parties to brief whether proceedings should be stayed as to non-debtors A&A, Saronis, and MHOP. Debtor asked the court stay the entire lawsuit, while Appellant opposed any stay for non-debtor entities.

Initially, the Vermont Superior Court refused to extend the automatic stay to A&A, Saronis, and MHOP under *Queenie*, finding the "extraordinary relief" *Queenie* authorized "has only been applied in situations where the business was wholly owned by the debtor, which is not the case here." (Doc. 2-6 at 8, 9.) Finding it irrelevant whether Manchester CP, in its role as a plaintiff, "treated [A&A, MHOP, and Saronis] as the alter egos of [Debtor,]" *id.* at 9, especially when Debtor disclaimed that status, the Vermont Superior Court concluded that the automatic stay could not be extended merely because of some relationship or dependency between Debtor and non-debtor entities. Finding the district court's reasoning in *In re McCormick*, 381 Bankr. 601, 602 (Bankr. S.D.N.Y. 2008) persuasive, the Vermont Superior Court quoted it at length:

> The Court understands that Debtor is employed by the LLC, and any action against the LLC may impact his "employment" and ultimately his ability to reorganize under chapter 13. The Court does not find this argument persuasive. The Debtor has never provided this Court with a satisfactory explanation for why he could not cause the LLC to file its own bankruptcy case which, as his counsel admitted during the hearing, would invoke the automatic stay on behalf of the company and thereby stay all pending collection actions against it.

3

(Doc. 2-6 at 9) (quoting *In re McCormick*, 381 Bankr. at 602). The Vermont Superior Court similarly found that "[t]here is no reason why any of the remaining Defendants here could not file for bankruptcy, thus triggering the automatic stay on their behalf." *Id.*

Having rejected the extension of the automatic stay under *Queenie*, the Vermont Superior Court nonetheless stayed the case on alternative grounds, citing the "copious number of motions filed[,]" its need to decide "disputes a second time after [Debtor's] automatic stay is lifted[,]" and "its inherent powers [to] stay the proceeding in the interest of controlling its docket." *Id.* (the "August 15, 2016 Stay Order").

On September 16, 2016, A&A declared chapter 7 bankruptcy. On October 5, 2016, the Vermont Superior Court reconsidered its August 15, 2016 Stay Order, allowing the claims against Saronis and MHOP to proceed, but staying proceedings against A&A pursuant to the automatic stay.

On November 21, 2016, the Bankruptcy Court confirmed Debtor's chapter 13 reorganization plan. On November 22, 2016, in response to the Vermont Superior Court's decision to allow Appellant's suit to proceed against Saronis and MHOP, Debtor filed an adversary proceeding in the Bankruptcy Court, seeking an extension of the automatic stay to Saronis and MHOP. In his complaint, Debtor argued that the Second Circuit's decision in *Queenie* required an extension of the stay to Saronis and MHOP and that the Bankruptcy Court's equitable powers under 11 U.S.C. § 105(a) authorized this result as well.

On December 2, 2016, Appellant moved to dismiss the adversary proceeding on the grounds that the complaint failed to state a claim for relief and that any extension of the automatic stay to non-debtor entities would constitute extraordinary relief not authorized by the Bankruptcy Code. On December 5, 2016, Debtor opposed Appellant's motion to dismiss and requested a determination of the extent of the automatic stay on an expedited basis.

On December 9, 2016, the Bankruptcy Court held a joint hearing with the Vermont Superior Court to determine whether the automatic stay should extend to Saronis and MHOP. Debtor argued that the automatic stay should extend to Saronis and

4

MHOP because: (1) his interests in Saronis and MHOP are property of the bankruptcy estate and proceeding against them would violate § 362(a)'s stay as to his property interests in those entities; (2) his sole source of income to fund his recently confirmed chapter 13 reorganization plan is derived from Saronis and MHOP; and (3) as a principal member of both Saronis and MHOP, Debtor would be responsible for defending against Appellant's action in state court during the pendency of his chapter 13 reorganization.

In the course of their proceeding, the Bankruptcy Court and the Vermont Superior Court heard evidence that Debtor and his wife are the sole shareholders of A&A and that Debtor guaranteed A&A's lease obligations to Appellant for the leased property. The evidence further established that Debtor controls 10% of MHOP's shares and the remaining shares are owned by Debtor's wife (49.8%) and Debtor's daughter (40.2%). Debtor receives dividends in accordance with his 10% interest in an unspecified amount. He is not employed by MHOP, nor is there any evidence that he is an officer of that entity. In the affidavit he filed with the Bankruptcy Court, although he states he "provide[s] services to MHOP Restaurant Corp. [which] are based upon [his] physical ability and [he is] not on the payroll[,]" he claims no role in MHOP's daily operations and avers that he has "limited physical capacity to work." (Doc. 2-6 at 21.) He further avers that his "sole source of income is dividend income from MHOP[], wages that [his] wife earns from MHOP[] and assistance from [his] daughter who works for the corporation." Id.[1]

Debtor and his wife are the sole members of Saronis and own their interests in that limited liability company as tenants by the entirety. The Bankruptcy Court found Debtor therefore had a "50% interest in Saronis[.]" (Doc. 2-17 at 4.) Debtor is not employed by Saronis, and claims no title, office, or management role over its operations in the affidavit he filed in the Bankruptcy Court.

---

[1] Although the Bankruptcy Court found that "Debtor's sole source of income for funding his chapter 13 plan is from the operations of MHOP and Saronis[,]" (Doc. 2-17 at 4), it based this finding on the fact that "Saronis is the owner of MHOP's business location." Id. at n.8. There is no evidence that Debtor receives any actual income from Saronis.

5

Thereafter, the Bankruptcy Court and the Vermont Superior Court apparently agreed that the Bankruptcy Court would decide the disputed issue. On December 9, 2016, the Bankruptcy Court issued an oral ruling extending the automatic stay to Saronis and MHOP under *Queenie*. In a subsequent written Memorandum of Decision, the Bankruptcy Court explained that the allegations in the adversary complaint were sufficient to state a plausible claim for relief because there was a reasonable inference "that a continuation of the state court proceeding against MHOP and Saronis would violate the Debtor's automatic stay and jeopardize his efforts to reorganize." (Doc. 2-17 at 5.) The Bankruptcy Court further found that the state court litigation against Saronis and MHOP "would have an immediate, substantial, and adverse effect on the Debtor's orderly reorganization, and constitute an action to obtain possession of property of the estate, in violation of the automatic stay imposed by § 362." *Id.*

Noting that its equitable powers under § 105 were even broader than the exception in *Queenie*, the Bankruptcy Court ruled that "weighing the equities presented, the scales tip decidedly in favor of the Debtor" because "[n]ot extending the stay would permanently destroy all chances of the Debtor's successful reorganization, whereas extending the stay would only temporarily enjoin [Appellant's] collection efforts, deferring its action for no more than 5 years." (Doc. 2-17 at 10.) Because the Bankruptcy Court did not squarely address whether Debtor, MHOP, and Saronis had demonstrated a likelihood of success on the merits in the state court litigation and did not address the requirements of irreparable harm or the posting of a bond, it is not clear whether the Bankruptcy Court grounded its injunctive relief in § 105(a). It, however, entered judgment on the pleadings in favor of Debtor, MHOP, and Saronis, finding that Appellant had "failed to present any persuasive legal argument, under either the Bankruptcy Code or pertinent case law, which would defeat the Plaintiffs' right to the relief they seek in the [Adversary Proceeding] Complaint." (Doc. 2-17 at 11.)

On January 20, 2017, Appellant timely filed its notice of appeal, raising three issues:

6

1. Whether the Bankruptcy Court committed an error of law in extending the automatic stay of bankruptcy to non-debtor MHOP Restaurant Corp. in which Debtor owns a 10% interest and by which he alleges he is not employed.

2. Whether the Bankruptcy Court committed an error of law in extending the automatic stay of bankruptcy to non-debtor Saronis in which Debtor owns a 50% interest and by which he alleges he is not employed.

3. Whether the Bankruptcy Court committed an error of law in enlarging the holding of *Queenie* and extending a chapter 13 automatic stay to non-debtor entities thus depriving Appellant of its opportunity to prosecute its state court action against those entities.

## II. Conclusions of Law and Analysis.

### A. Jurisdiction and Standard of Review.

The Bankruptcy Court has subject matter jurisdiction over Debtor's chapter 13 bankruptcy and the adversary proceeding under 28 U.S.C. § 1334 and § 157(a). It entered a final judgment in the adversary proceeding on January 6, 2017. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

The Bankruptcy Court's findings of fact are reviewed for clear error. *In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 469 (2d Cir. 2017); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990). Its conclusions of law are reviewed *de novo*. *In re Lehman Bros.*, 855 F.3d at 469; *In re Manville Forest Prods.*, 896 F.2d at 1388.

### B. Applicability of § 362(a) to Non-Debtors Saronis and MHOP under *Queenie*.

Section 362(a) of the Bankruptcy Code provides in relevant part that "a petition filed under [the Bankruptcy Code] . . . operates as a stay, applicable to all entities, of[] . . . the commencement or continuation . . . of a judicial[] . . . action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under [the Bankruptcy Code.]" 11 U.S.C. § 362(a)(1) (emphasis supplied). "The stay is designed to give the debtor time to organize its affairs-which includes protection from having to defend claims brought against the estate as well as continuing

7

to pursue judicial proceedings on its own behalf." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986). The automatic stay thus "provides the debtor with 'a breathing spell from his creditors.'" *Id.* at 64 (quoting S. Rep. No. 95-989, at 54-55 (1978)).

Generally, section 362(a)'s automatic stay provisions do not apply to non-debtors. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2d Cir. 2000) ("'It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.'") (quoting *Butler*, 803 F.2d at 65) (collecting cases)); *see also McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509-10 (3d Cir. 1997) ("[I]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor.") (quoting *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196-97 (6th Cir. 1983)). "As one court has reasoned, a primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to insure that creditors obtain 'the protection they sought and received when they required a third party to guaranty the debt.'" *McCartney*, 106 F.3d at 510 (quoting *Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988)). In *Queenie*, the Second Circuit recognized a limited exception to this general rule, holding that the automatic stay may extend to non-debtors in the following circumstances:

> The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510-11 (3d Cir. 1997), a claim against the debtor's insurer, *Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 26 B.R. 420, 435-36 (Bankr. S.D.N.Y 1983) (on rehearing), and actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant[.]" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

*Queenie*, 321 F.3d at 287-88. "Under these principles, [the Second Circuit held] the stay applies to Queenie because it is wholly owned by [the debtor] Gardner, and adjudication

8

of a claim against the corporation will have an immediate adverse economic impact on Gardner." *Id.* at 288.

In this case, the Bankruptcy Court concluded that *Queenie*'s requirements for extending the automatic stay to MHOP and Saronis were satisfied because "the undisputed facts demonstrate the success of the Debtor's [c]hapter 13 reorganization is entirely dependent upon the continued operations of those two non-debtor entities" and because Appellant's claims against these non-debtors posed a risk of "immediate adverse economic consequence" to Debtor's chapter 13 plan. (Doc. 2-17 at 8.) The Bankruptcy Court held that "Debtor's ownership interest in [MHOP and Saronis] is not determinative." *Id.*

While ownership may not be the only grounds for extension of the automatic stay to a non-debtor entity, the *Queenie* court made one reference to Gardner's status as Queenie's president and six references to Queenie's wholly-owned status by Gardner in the course of its ten-page opinion. More importantly, it held that "the stay applies to Queenie *because it is wholly owned by [the debtor] Gardner*, and adjudication of a claim against the corporation will have an immediate adverse economic impact on Gardner." *Queenie*, 321 F.3d at 288 (emphasis supplied). The degree of the debtor's ownership over the non-debtor was thus an essential component of the Second Circuit's holding.

The *Queenie* court's citation of "examples" in which extension of the automatic stay may be proper underscores the conclusion that the relationship between the debtor and a non-debtor cannot be attenuated or indirect. For example, in *McCartney*, the Third Circuit recognized "'unusual circumstances'" permitting the extension of the automatic stay to a non-debtor included not only where "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor[,]" but also where "stay protection is essential to the debtor's efforts of reorganization." *McCartney*, 106 F.3d at 510. In support of the latter exception, the Third Circuit cited two cases and an article in which the stay was extended to: (1) the non-debtor principals of debtor partnerships because only the principles could "effectively formulate, fund, and carry out debtors' plans of reorganization[;]" (2) a non-debtor guarantor of the debtor corporation's

9

obligations where the "guarantor was president of [the] debtor and [its] services, expertise and attention were essential to the reorganization of the debtor[;]" and (3) where ownership of a non-debtor entity was the only asset in the debtor's bankruptcy estate. *Id.* (citations omitted). None of those circumstances are present here. Debtor does not operate or control MHOP or Saronis, he is not employed by either of them, they will not formulate, fund, and carry out his reorganization plan, and neither MHOP nor Saronis constitute the sole asset of his bankruptcy estate.

In *Johns-Manville*, the second example cited by the Second Circuit, the bankruptcy court temporarily extended the automatic stay to the debtor's "key operating personnel . . . who are presently working for [debtor] at very high levels in numerous divisions of the company" in light of the "massive drain on these numerous individuals' time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests [which] could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization." *In re Johns-Manville*, 26 Bankr. at 426. The district court limited this protection to "certain officers, directors, employees and agents who are themselves named parties in litigation and who are vital to plan formulation and reorganization" and allowed the debtor to designate no more than twenty-five individuals who warranted the extension of the automatic stay on this basis. *Id.* at 434. Declining to extend the automatic stay to other individuals employed by the corporate debtor, the bankruptcy court ruled that the requirements for a preliminary injunction, most notably irreparable harm, had not been established.

Debtor's relationship to MHOP and Saronis in the instant case and the demands of the state court litigation cannot be deemed analogous to the overwhelming litigation burdens faced by the corporate debtor and its employees in *Johns-Manville*. The only finding the Bankruptcy Court made in this respect was that Debtor "would be a primary witness in the [state court] litigation" (Doc. 2-17 at 4) which had been pending for over two years when Debtor filed his chapter 13 bankruptcy petition. There is no record as to what, if any, burdens the state court litigation will impose on Debtor other than his status as a witness.

10

In *A.H. Robins Co. v. Piccinin*, the third and final example cited by the *Queenie* court, the Fourth Circuit agreed that extension of the automatic stay to non-debtor codefendants or third parties should be governed by a preliminary injunction standard requiring irreparable harm and either a likelihood of success on the merits or the existence of sufficiently serious questions going to the merits and the balance of hardships tipping in the debtor's favor. It cabined such relief to "unusual circumstances" where the non-debtor's "interests are so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest[.]" *Piccinin*, 788 F.2d at 1001. Debtor makes no claim to a similar relationship with either MHOP or Saronis and the Bankruptcy Court did not ground its analysis in such a finding. Accordingly, none of the *Queenie* court's examples support the outcome reached in this case.[2]

As for the argument that an adverse result in the state court litigation may have a negative impact on Debtor and his reorganization, the *Queenie* court refused to extend the automatic stay to Gardner's and Queenie's counterclaim co-defendants on that basis. *Queenie*, 321 F.3d at 284 ("We conclude that the automatic bankruptcy stay applies to Gardner and to Queenie, his wholly owned corporation, but not to the other judgment-debtors, Heavenly or Heaven"). In so ruling, the *Queenie* court rejected the proposition that the automatic stay extends to any litigation that has the potential for an adverse impact on the debtor:

> Gardner contends that the stay should also apply to the Heavenly Appellants because "[i]f this Court decides the pending appeal of the non-debtor co-judgment debtors, it is effectively deciding Mr. Gardner's stayed appeal." In essence, Gardner seeks to apply the stay to the Heavenly Appellants to avoid the later use against himself and his corporation of

---

[2] Other Circuits have similarly declined to extend section 362(a) to non-debtors absent a showing that the debtor and the non-debtor seeking the benefits of the automatic stay are "inextricably intertwined." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) (declining to apply the "unusual circumstances" exception where the bankruptcy court's findings did not indicate sufficient identity between debtor and non-debtor); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (affirming denial of stay where only alleged connection between debtor and non-debtor was a claim for contribution); *Credit All. Corp. v. Williams*, 851 F.2d 119, 121-22 (4th Cir. 1988) (enforcing a default judgment against a nondebtor guarantor during the corporate obligor's bankruptcy).

11

> offensive collateral estoppel arising from a ruling on this appeal adverse to these Appellants or at least to guard against the precedential effect of such a ruling.
>
> We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.

*Id.* at 288 (footnote omitted) (alteration in original).

Debtor's argument that the state court litigation may result in an adverse outcome for his bankruptcy estate further misapprehends the legal theories on which Appellant seeks to proceed. Although the Bankruptcy Court concluded that Appellant "does not allege any direct claims against MHOP or Saronis" (Doc. 2-17 at 4), both entities are named defendants in the state court litigation and Appellant asserts claims against each of them. Moreover, the type of claims Appellant asserts do not depend on Debtor's liability and are not derivative of it.

The Vermont Supreme Court has recognized "reverse" piercing of the corporate veil claims to allow creditors to reach the assets of a corporation where the conduct of an individual shareholder is designed to "shelter the assets . . . from lawful claims[.]" *Winey v. Cutler*, 678 A.2d 1261, 1262-63 (Vt. 1996) (internal quotation marks omitted). The premise of reverse piercing is based on the same equitable considerations which underpin traditional alter ego claims; namely, that individual debtors cannot evade responsibility to their creditors by sheltering assets in a corporation over which they exercise exclusive control. *See* 1 *Fletcher Cyclopedia of Corp.* § 41.70; *see also LiButti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997) ("The factors employed under alter ego analysis are essentially designed to attack the corporate structure, such as ' . . . siphoning off of funds by the dominant shareholder[.]'") (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996)).

It would be wrong, however, to characterize "reverse" piercing claims as "derivative" and "dependent" because "[w]hen a court engages in reverse piercing, it

imposes liability directly on a corporation." *S.E.C. v. Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003); *see also Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 364 (5th Cir. 2005) (the purpose of reverse piercing is "to hold . . . corporations liable for the acts of their individual shareholder[s]"); *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("reverse piercing . . . seeks to hold a corporation accountable for actions of its shareholders.") (internal quotation marks omitted). As a result, under Vermont law, in the event Appellant obtains a judgment against Saronis and MHOP, or either of them, the liability will be imposed on *them* and paid from *their assets* without any judgment imposed on *Debtor* or *his* assets. *See Winey*, 678 A.2d at 1262-63 (observing that "corporations are not intended to be used to shelter the assets of shareholders from lawful claims of judgment creditors" and when that occurs, "reverse piercing" will allow a party "to hold a corporation liable for the obligations of a shareholder") (internal quotation marks omitted). In the context of bankruptcy, a debtor "cannot be accurately described as the real-party defendant in [a] suit" which results in "[a] judgment" against a third party that "imposes no obligations or liability on [the debtor.]" *In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 923 (8th Cir. 2012) (quoting *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007)).

Successor liability mandates no different outcome. As the Vermont Supreme Court held in *Gladstone v. Stuart Cinemas, Inc.*, 2005 VT 44, 178 Vt. 104, 878 A.2d 214 although generally "'the liabilities of a predecessor corporation will pass to the successor only when the change is occasioned by statutory merger or consolidation[,]'" an exception is "when the [successor] corporation is merely a continuation or reincarnation of the [predecessor] corporation" which allows "a creditor to recover from the successor corporation[.]" *Gladstone*, 2005 VT 44, ¶¶ 14, 19. Under *Gladstone*, if Appellant prevails on its successor liability claims in the state court litigation, those claims will be in no way derivative of Debtor's liability or result in a de facto judgment against him. To

13

the contrary, at best, MHOP or Saronis, or both of them, will be deemed liable for A&A's debts.[3]

Finally, although Debtor has established that he would like to participate in the state court litigation and has an interest in continued receipt of dividends from MHOP and gifts of income from Saronis to fund his chapter 13 reorganization plan, he makes no claim that MHOP and Saronis are somehow precluded from seeking bankruptcy protection on that basis. Debtor's chapter 13 plan thus does not so much "depend[] upon [these] two entities' continuing operations" (Doc. 2-17 at 7), as it depends on Debtor's family members' continued generosity.

For the foregoing reasons, the Bankruptcy Court erred as a matter of fact and law when it concluded that Appellant's claims against MHOP and Saronis are "derivative" of and "dependent on" Debtor's liability and that Appellant "does not allege any direct claims against MHOP or Saronis." *Id.* at 4, 10. Its conclusion that "Plaintiffs are entitled to an extension of the stay to MHOP and Saronis to enjoin the pending state court suit which seeks relief based solely upon derivative liability relating back to the Debtor" is thus in error and must be vacated. *Id.* at 10. The relationship between Debtor and MHOP and Saronis is not "inextricably intertwined" and Debtor is not the real party in interest with regard to Appellant's claims against those non-debtor entities. *Queenie* therefore does not authorize extension of the automatic stay to non-debtors MHOP and Saronis in the circumstances of this case.

### C. Whether 11 U.S.C. § 105(a) Authorizes Extending the Automatic Stay in Chapter 13 Cases to Non-Debtor Co-Defendants.

As an alternative ground for extending the automatic stay to Saronis and MHOP, the Bankruptcy Court cited its equitable authority under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

---

[3] The Bankruptcy Court observed that "[i]n order for Manchester CP to prevail in state court with its successor liability claim against MHOP, it must persuade the state court to rule against A&A *and* its president, Mr. Konstantinou, and any such suit or ruling against the Debtor is prohibited by § 362." (Doc. 2-17 at 10.) Neither *Gladstone* nor the cases upon which it relies require a finding against a corporation's president as a condition precedent to successor liability.

14

[the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(a) authority includes the power to enjoin third parties in matters related to a bankruptcy proceeding. *See Queenie*, 321 F.3d at 288 (noting that § 105(a) "grants broader authority" than § 362(a)). The "usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a)." *In re Excel Innovations, Inc.*, 502 F.3d at 1094.

Debtor argues that although § 105 "does not apply in [c]hapter 13 cases, there is nothing in 11 U.S.C. § 105 which precludes its use in [c]hapter 13." (Doc. 2-6 at 6.) Appellant counters that § 105(a) is inapplicable to bankruptcies filed under chapter 13 because 11 U.S.C. § 1301, commonly referred to as the co-debtor stay, provides that:

> after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt[.]

*Id.* at § 1301(a). In contrast, chapter 11 contains no analogous provision for staying actions against co-debtors. *See Queenie*, 321 F.3d at 287 (noting that unlike in chapter 11, the stay set forth in 11 U.S.C. § 1301(a) extends the automatic stay in chapter 13 proceedings to "'any individual that is liable on [a] debt with the debtor'"). Appellant argues that this reflects congressional intent to limit a bankruptcy court's power to enjoin litigation against third party non-debtors in chapter 13 cases. In support of this proposition, Appellant cites *In re McCormick*, 381 B.R. at 598, which declined to extend the co-debtor stay in § 1301 or the automatic stay in § 362(a) to a non-debtor LLC that was wholly owned and controlled by the debtor. The *McCormick* court concluded that because *Queenie* was decided in the context of a chapter 11 case and because of the presence of the co-debtor stay provision in chapter 13, it could not invoke § 105(a) to stay proceedings against the non-debtor LLC in a chapter 13 case. The Bankruptcy Court for the Southern District of Ohio reached this same conclusion in *In re Saleh*, 427 B.R. 415, 422 (Bankr. S.D. Ohio 2010).

Both the *McCormick* and *Saleh* courts observed that their review of the case law revealed no instances in which a stay was issued under § 105(a) in favor of a non-debtor third party in a chapter 13 case. This court's own inquiry has yielded the same result.

15

While nothing in the text of § 105(a) or the Second Circuit's decisions interpreting it expressly *restricts* the scope of a bankruptcy court's authority to issue injunctions in chapter 13 cases, § 105(a) power is not unlimited and the absence of authority is telling.

In this case, to allow the extension of the automatic stay to non-debtor entities would exceed the Bankruptcy Court's equitable authority. *See In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005) ("[§ 105(a)] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."); *In re Barbieri*, 199 F.3d 616, 621 (2d Cir. 1999) ("In short, although § 105(a) grants a Bankruptcy Court broad powers, it does not authorize the Court to disregard the plain language of [the Code]."). Even if the Bankruptcy Court possessed this authority, Debtor's need for income for his reorganization does not alone satisfy the requirements for a preliminary injunction, especially when he seeks to obtain this income from non-debtor entities alleged to have engaged in fraud.

A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24.

In this case, the Bankruptcy Court did not find a likelihood of success on the merits in the state court litigation, irreparable harm, address the public interest, or require the posting of a bond or security in the event Appellant was wrongfully injured. It is therefore doubtful that it grounded its decision on § 105(a). To the extent it did, in addition to the absence of authority for extending the § 105(a) stay to chapter 13 cases, the record falls far short of establishing Debtor's, MHOP's, and Saronis's entitlement to the extraordinary relief of a preliminary injunction. Any injunction issued pursuant to § 105(a) was therefore in error.

## CONCLUSION

For the reasons set forth above, the court REVERSES the Bankruptcy Court's decision and VACATES the automatic stay as to non-debtors MHOP and Saronis, and REMANDS the case to the Bankruptcy Court for further proceedings consistent with this Opinion.

Dated at Burlington, in the District of Vermont, this 16th day of November, 2017.

Christina Reiss, Chief Judge
United States District Court